NOT FOR PUBLICATION                                                                    CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

FAUSTO ARISMENDY PLASENCIA,   :

                Petitioner,                :               Civil Action No. 14-0531 (SRC)

                v.                              :

ERIC HOLDER, JR., et al.,                :               **OPINION**

                Respondents.           :

_____

**CHESLER, District Judge:**

      Petitioner, a native and citizen of the Dominican Republic, submitted his § 2241 petition ("Petition") while being confined at the Bergen County Jail, Hackensack, New Jersey. See ECF No. 1. He asserted that he was a removal-period detainee who: (a) was ordered removed to the Dominican Republic by an order finalized in September 2004; (b) successfully removed in March 2005; (c) illegally reentered the United States in 2009; (d) obtained a brief deferral of his re-removal in 2011 in exchange for his assistance to U.S. law enforcement officers with a certain investigation; and (d) had his order of removal reinstated by an immigration official on August 15, 2013, pursuant to 8 U.S.C. § 1231(a)(5), which triggered the re-removal process.[1] See id.,

---

[1] In 1996, Congress changed the manner in which reinstatements of orders of removal are handled. Now, the statute reads, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). Under the regulation interpreting the statute, an alien subject to reinstatement "has no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a); see also Ponta-Garcia v. AG of the United States, 557 F.3d 158, 161 (3d Cir. 2009).

On January 24, 2014, he submitted the Petition at bar seeking release from confinement under Zadvydas v. Davis, 533 U.S. 678 (2001).  See id.[2]  This Court's review of the public records maintained by the U.S. Immigration and Customs Enforcement ("ICE") determined that Petitioner is no longer in immigration custody, which suggests that he was either re-removed or released.  See https://locator.ice.gov/odls/searchByName.do.  Thus, his Petition appears moot.

Alternatively, it is subject to dismissal on the merits.  Under 8 U.S.C. § 1231(a)(1)(B), Petitioner's re-removal period was triggered on August 15, 2013.[3]  In Zadvydas, the Supreme Court extended this 90-day period by holding that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.  Recognizing that this holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "*presumptively* reasonable period of detention."  Id. at 700-01 (emphasis supplied).  However, the Court stressed, in no ambiguous terms, that even

> [a]fter this 6-month period, o[nly if] *the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*, the Government must respond with evidence sufficient to rebut that showing. . . . This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in

---

[2] Petitioner also sought withholding of removal upon asserting that, in light of the assistance he had provided to U.S. law enforcement officers, his life could be in danger if he were removed.

[3]
> [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. . . . Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  If there is another potential event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date.

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000).

> confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

Here, Petitioner's six-month re-removal period was still running when he filed the Petition at bar. These six months expired only on February 14, 2014. Thus, even if Petitioner's re-removal detention has not ended, his re-removal period is only eight months long, and he failed to provide this Court with any reason to believe that there is no significant likelihood of his re-removal to the Dominican Republic in the reasonably foreseeable future. Hence, his attack on his detention is subject to dismissal, as unripe, without prejudice to raising this claim in a new and separate Section 2241 petition, if this claim ripens. Moreover, Petitioner's challenges to his order of removal (on the grounds of the alleged danger he might face in the Dominican Republic) are subject to dismissal for lack of jurisdiction,[4] and this Court finds that transfer of the Petition to the Court of Appeals is not in the interests of justice.[5] Thus, the Petition will be dismissed in its entirety. An appropriate Order follows.

                                                  s/ Stanley R. Chesler
                                                  STANLEY R. CHESLER
                                                  United States District Judge

Dated: April 22, 2014

---

[4] Section 1252(g), as amended by the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005), explicitly bars judicial review by district courts of, inter alia, removal matters. See Chehazeh v. AG of the United States, 666 F.3d 118, 134 (3d Cir. 2012) (relying on Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)).

[5] While this Court declines to construe the Petition at bar as Petitioner's application seeking review by the Court of Appeals of his re-removal order, no statement in this Opinion or the accompanying Order shall be construed as: (a) barring Petitioner from petitioning the Court of Appeals for such review; or (b) expressing this Court's position that such petition for review, if filed, would be procedurally proper or substantively meritorious.